UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREA IRWIN,

       Plaintiff,

v.

MUTUAL OF OMAHA INSURANCE
COMPANY,

       Defendant.
_____/

CASE NO.1:16-cv-982

HON. PAUL L. MALONEY

## **OPINION**

      This action arises under the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Before the Court is Plaintiff Andrea Irwin's motion to reverse Defendant's long-term disability benefits denial and motion for summary judgment. (ECF No. 11.) Upon careful review of the record, the Court has decided that the motion can be resolved without oral argument. *See* W.D. Mich. LCivR 7.3(d). For the reasons that follow, Plaintiff's motion is denied.

**I.**

      Plaintiff worked as a production team member for Gentex Corporation ("Gentex"), and sought short-term and long-term disability benefits under a policy issued by United of Omaha Life Insurance Company ("United") to Gentex. Plaintiff was an insured employee covered by this policy. Under the policy, United would pay insured persons short-term and long-term disability benefits to which they are entitled, subject to the terms, conditions, and limitations of the policy. (Policy, ECF No. 7-2, PageID.212.) It provides:

> *Disability* and *disabled* mean that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred, as a result of which:
>
> a) during the Elimination Period, You are prevented from performing at least one of the Material Duties of Your Regular Job (on a part-time or full-time basis); and
>
> b) after the Elimination Period, You are:
>     1. prevented from performing at least one of the Material Duties of Your Regular Job (on a part-time or full-time basis); and
>     2. unable to generate Current Earnings which exceed 99% of Your Basic Weekly Earnings due to that same Injury or Sickness.
>
> Disability is determined relative to Your ability or inability to work. It is not determined by the availability of a suitable position with the Policyholder. [ ]
>
> *Elimination Period* means the number of days of continuous Disability which must be satisfied before You are eligible to receive benefits. The elimination period is shown in the Schedule. [ ]
>
> *Material Duties* means the essential tasks, functions, and operations relating to Your Regular Job that cannot be reasonably omitted or modified. [ ]
>
> *Regular Job* means the occupation You are routinely performing when Your Disability begins.

(*Id.* at PageID.55-58; PageID.240-42.) Under the long-term policy, "[a]fter a Monthly Benefit has been paid for 3 years, *Disability* and *Disabled* mean You are unable to perform all of the Material Duties of any Gainful Occupation." (*Id.* at PageID.55.) Also, instead of *regular job*, the long-term policy refers to *regular occupation*, which is defined as:

> the occupation You are routinely performing when Your Disability begins. Your regular occupation is not limited to Your specific position held with the Policyholder, but will instead be considered to be a similar position or activity based on job descriptions included in the most current edition of the U.S. Department of Labor Direction of Occupational Titles. We will have the right to substitute or replace the DOT with another service or other information that We determine to be of comparable purpose, with or without notice. To determine Your regular occupation, We will look at Your occupation as it is normally performed in the national economy, instead of how work tasks are performed for a specific employer, at a specific location, or in a specific area or region.

(ECF No. 7-1, PageID.58.)

On September 5, 2014, Plaintiff presented to David J. Barney, a certified physician's assistant, for a follow-up visit for depression and complaints of depressed mood and fatigue, which began approximately 10 years prior and had gradually improved since then. (*Id.* at PageID.107.) On February 13, 2015, Plaintiff presented to Barney with insomnia that had worsened since her last visit. (*Id.* at PageID.141.) Approximately two months later, Plaintiff saw Barney and complained of headaches for 3 days. (*Id.* at PageID.151.) On June 5, 2015, Plaintiff presented to Barney with fatigue, described as true arthritis and true exercise intolerance; her symptoms included insomnia, depression, and lack of interest in normal activities. (*Id.* at PageID.156.) Three weeks later, Plaintiff saw Barney for a follow-up appointment; she complained of anhedonia, depressed mood, insomnia, and loss of energy. (*Id.* at PageID.163.) On July 22, 2015, Plaintiff presented to Barney with pain in arms, knees, hips, bilateral elbows and wrists, described as aching and dull. Her symptoms included morning stiffness and weakness of hands in moderate severity, and worsened with movement like standing, walking, and raising her arms overhead. (*Id.* at PageID.170.) On July 30, 2015, Plaintiff presented with worsening knee pain, which was aggravated by going up and down stairs, squatting, kneeling, and pivoting. (*Id.* at PageID.176.)

In early August 2015, Plaintiff claimed short-term disability benefits under the policy, and United requested that Barney complete an attending physician's statement. (ECF No. 7-4, PageID.363-64.) On August 6, 2015, Barney completed the form; her diagnosis and symptoms were anxiety, depression, and insomnia, which began on November 11, 2013. (*Id.* at PageID.364.) The form stated that Plaintiff could occasionally lift and carry up to 25 pounds, and could occasionally sit, stand, walk, bend, squat, stoop, kneel, work with others, perform right and left finger-dexterity

3

activities, right and left below-shoulder activities, and right above-shoulder activities. (*Id.*) As to Plaintiff's mental limitations and abilities, the form stated that Plaintiff had good judgment and decision making, good independent functioning, good concentration and attention span, good ability following recommendations, good ability caring for self and family, a good overall prognosis, and a fair ability to deal with work stress and emotional liability. (*Id.*) Barney concluded that Plaintiff had been continuously disabled from July 23, 2015, but should be able to work full-time in 3 or 6 months or by January 30, 2016. (*Id.*)

A week later, United obtained Plaintiff's authorization for medical records and sought records from June 18, 2015 to the present from Barney and records from July 23, 2015 to the present from therapist Cindy Kimball of Aspen Psychological Services, the two providers identified by Plaintiff. (*Id.* at PageID.327-28, 330.) United received medical records from Barney for Plaintiff's visits on June 26, 2015, July 22, 2015, and July 30, 2015. (*Id.* at PageID.334-52.) Kimball refused to send Plaintiff's records, despite Plaintiff's authorization to do so. (ECF No. 7-2, PageID.205.)

On September 9, 2015, United informed Plaintiff that her short-term disability claim was denied because the evidence[1] did not show that anxiety, depression, or insomnia constituted a significant change in her mental or physical functional capacity as of her final day of work, rendering her unable to perform the material duties of her regular job of light assembly. (ECF No. 7-4, PageID.323-26.) United noted that Plaintiff's last day of work was July 13, 2015,[2] and she did not see Barney when she stopped working. (*Id.* at PageID.324.) United explained that "[t]he office visit

---

[1] The letter indicates that it relied upon her short-term disability claim information, the attending physician's statement signed by Barney on August 6, 2015, and her medical records received from Barney from June 12, 2015 through July 30, 2015.

[2] The employer's statement lists Plaintiff's last day as July 12, 2015. (ECF No. 7-3, PageID.296.)

4

notes received did not show a significant change in your condition at the time you ceased working. There is no objective evidence of your symptoms in the records received that show impairment." (*Id.*) United concluded that, "the information and documentation received did not support any restrictions or limitations that would preclude you from performing the materials of your job from your last day worked forward. Therefore, no benefits are payable, and your claim has been denied." (*Id.*)

On September 29, 2015, Plaintiff filed a long-term disability claim, which included an employer's statement identifying Plaintiff's job title was light assembly and that her last day of work was on July 12, 2015. (ECF No. 7-3, PageID.296-97.) It also stated that Gentex had a rehire or return-to-work policy for disabled employees "if [Gentex] can accommodate," and that Plaintiff's job would be held open for 12 weeks. (ECF No. 7-3, PageID.297.) On October 1, 2015, Barney submitted an attending physician's statement in connection with Plaintiff's long-term disability claim. He made the same diagnosis of anxiety, depression, and insomnia as he did in his August 6, 2015 attending physician's statement. (*Id.* at PageID.288-90.) He again described the symptoms as first appearing on November 11, 2013, but now described them as depressed mood, fatigue, hopelessness, major depression, and dysthymia. (*Id.* at PageID.289.) He further concluded that she was "unable to perform all job duties" and that he did not expect Plaintiff to return to her prior level of functioning. (*Id.* at PageID.290.) On September 20, 2015, Dr. Campbell indicated that Plaintiff was medically unfit to work because of her depression, fibromyalgia, chronic pain syndrome, and breast cancer.[3] (ECF No. 7-1, PageID.98.)

---

[3] The note is marked void repeatedly on its face.

On October 2, 2015, United informed Plaintiff that it had received her long-term disability claim and that it had requested Plaintiff's medical records from September 1, 2014 through June 28, 2015 and July 31, 2015 to current. (ECF No. 7-1, PageID.105.) United also asked Plaintiff to identify any health care providers other than Barney. (ECF No. 7-2, PageID.194-95.)

Plaintiff's counsel emailed United on November 6, 2015, to confirm Plaintiff's appeal of her short-term disability claim.[4] (*Id.* at PageID.268.) United acknowledged receipt of this appeal and asked whether she had anything more to submit. (*Id.* at PageID.278.) A week later, Plaintiff's counsel faxed United a letter from Barney, alleging that Plaintiff's conditions of major depression, fibromyalgia, chronic pain syndrome, and breast cancer "have had a serious impact on her health and mental status thus resulting in an impairment to perform the functions required of her job." (*Id.* at PageID.265-66.) Barney explained that "she is working on stabilizing these conditions however still suffers from highs and lows[,]" and that "[s]he will continue to be monitored and evaluated for progress." (*Id.* at PageID.266.) He requested that United reconsider her denial for short-term disability benefits. (*Id.*)

On December 1, 2015, United upheld its denial of Plaintiff's short-term disability claim.[5] (*Id.* at PageID.259-63.) United informed Plaintiff that she had exhausted all administrative rights

---

[4] Plaintiff's counsel sent this email in response to United's email seeking clarification on Plaintiff's appeal. United explained that the letter it received "state[d] your client would like to appeal her Long Term Disability decision. Her Long Term Disability claim is still pending a decision. If your client is attempting to appeal her Short Term Disability claim denial, please adjust your letter accordingly so I can start the appeals process."

[5] United indicated that it relied upon the attending physician's statements signed by Dr. John Campbell and Barney on August 6, 2015 and October 1, 2015, medical records received from Dr. Campbell from September 5, 2014 through July 20, 2015, Barney's signed letter, letters from Plaintiff's counsel, and documents submitted with counsel's letters. United's medical consultant completed the medical review on November 24, 2015. (ECF No. 7-3, PageID.260.)

6

to appeal her short-term benefits denial, and that she could seek a civil-action suit under § 502(a) of ERISA. (*Id.* at PageID.261-62.) On January 14, 2016, United informed Plaintiff that her long-term disability claim had been denied because "there [was] insufficient evidence to support that [Plaintiff] suffered from a significant change in mental or physical functioning when [she] ceased working on July 12, 2015[,]" and that there was "insufficient evidence to support that [Plaintiff was] suffering from a psychiatric or physical impairment that would preclude [her] ability to perform the Material Duties of [her] Regular Occupation from [her] last day worked and going forward." (ECF No. 7-1, PageID.76.) United also explained that it had not received the requested information from her therapists, and in order to provide her claim with a full and fair review, it was essential for her to provide such documentation with her letter of appeal. (*Id.*)

On February 24, 2016, Barney sent United a letter indicating that she is unable to work due to her severe depression, fibromyalgia, polyarthralgia, migraine headaches, and breast cancer. (*Id.* at PageID.74.) He explained that "[s]he is physically unable to lift, stand, twist or reach at a capacity that would be required to maintain any safe work environment[,]" and that "her mental status and coping skills have been debilitated which would result in unsafe conditions at work as well." (*Id.*) He concluded that "[t]hese conditions both individually and collective have had a serious impact on her physical and mental health resulting in complete impairment to perform the functions required of her job." (*Id.*) On February 25, 2016, Plaintiff's counsel asked United to consider Barney's letter as evidence for Plaintiff's appeal. Several days later, United responded via email to clarify whether counsel was referring to Plaintiff's short-term appeal or whether counsel wanted to file an official

7

long-term disability benefits appeal.[6] (ECF No. 7-3, PageID.257.) Plaintiff's counsel did not respond to this email. On May 18, 2016, United received another letter from counsel, asking when he should expect a ruling on Plaintiff's appeal. (*Id.* at PageID.256.) On May 24, 2016, United emailed counsel and attached Plaintiff's appeal ruling letter for her short-term disability claim 152050006901, dated December 1, 2015. (*Id.* at PageID.249-55.) United stated that if Plaintiff wanted to appeal the long-term disability decision, "please send a letter addressed to the Long Term Disability analyst and reference the Long Term Disability claim." (*Id.* at PageID.249.) Counsel did not respond. Approximately three months later, Plaintiff filed this lawsuit seeking long-term benefits on the ground that she suffers from "fibromyalgia, migraine headaches, and other conditions" that have "made it impossible for her to work." (ECF No. 1, PageID.1-4.)

## II.

When a plan administrator is given no discretionary authority by the plan, review of the administrator's decision by the district court is *de novo*, with respect to both the plan administrator's interpretation of the plan and the plan administrator's factual findings. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998). Although United's long-term and short-term disability policies contain discretionary language, in 2007, the Michigan Office of Financial and Insurance Services promulgated rules prohibiting insurers from issuing or delivering insurance contracts or policies that contain discretionary clauses granting the insurer discretionary authority to interpret the

---

[6] Plaintiff argues that on December 1, 2015, United informed Plaintiff's attorney that they had completed a review of her appeal for short-term and long-term disability benefits, and determined that the previous denial was appropriate. (Pl.'s Mot. for Summ. J. ¶ 18, ECF No. 11, PageID.405.) However, the pages cited by Plaintiff only refer to Plaintiff's short-term disability appeal. In light of this and United's email from March 7, 2016 (ECF No. 7-3, PageID.257), it does not appear that Plaintiff appealed her long-term disability denial.

8

policy and make benefit eligibility determinations. *See* Mich. Admin. Code R. §§ 500.2201-02 and 500.111-112. Because Michigan is the governing jurisdiction, the policy is subject to Michigan's laws. *See Gray v. Mutual of Omaha Life Ins. Co.*, No. 11-15016, 2012 WL 2995469, at *3 (E.D. Mich. July 23, 2012) (holding that Mich. Admin. Code R. §§ 500.2201-02 prohibit "discretionary clauses in insurance contracts issued, advertised, or delivered [after July 1, 2007] to any person in Michigan and requir[e] *de novo* review of denials of ERISA benefits within Michigan"); *see also Am. Council of Life Insurers v. Ross*, 558 F.3d 600, 602 (6th Cir. 2009) (holding that such rules are not preempted by ERISA).

United's policy became effective on January 1, 2014, so the Court must engage in *de novo* review. *Gray*, 2012 WL 2995469, at *3. In other words, the Court must take a "fresh look" at the administrative record, and "accord[] no deference or presumption of correctness" to the decisions of the plan administrator. *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 809 (6th Cir. 2002). United does not contest the application of *de novo* review. (ECF No. 12, PageID.429.)

**III.**

Plaintiff brings the action under § 502(a)(1)(B) of ERISA. To succeed in her claim for long-term disability benefits, she must prove by a preponderance of the evidence that she was "disabled" as defined by the policy. *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emp'rs*, 741 F.3d 686, 700-01 (6th Cir. 2014) (citing *Tracy v. Pharmacia & Upjohn Absence Payment Plan*, 195 F. App'x 511, 516 n.4 (6th Cir. 2006) and *Rose v. Hartford Fin. Servs. Grp., Inc.*, 286 F. App'x 444, 452 (6th Cir. 2008)).

9

**A. Plaintiff did not exhaust her administrative options for her long-term disability claim**

United denied Plaintiff's short-term and long-term disability claims. With each denial, Plaintiff received a notice of complaint and appeal procedure, which provides that United "must receive the Insured Person's complaint as soon as reasonably possible following the date of the incident or discovery that forms the basis for the Grievance." (ECF No. 7-1, PageID.53.) The policy defines grievance as "a complaint or appeal by an Insured Person concerning the payment of disability income benefits." (*Id.*)

"It is well-settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim" unless "exhaustion would be futile." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 717-18 (6th Cir. 2005); *see also LaRue v. DeWolff, Boberg & Assoc., Inc.*, 522 U.S. 248, 258-59 (2008) (noting that almost all of the Courts of Appeals have recognized the requirement that a participant must exhaust the administrative remedies mandated by § 503 of ERISA before filing suit under § 502(a)(1)(B)). Plaintiff's denial letters explain that, because her plan is governed by ERISA, she has "the right to bring a civil action suit under Section 502(a) of ERISA once all administrative rights to review have been exhausted." (*Id.* at PageID.253.)

Plaintiff argues that she appealed both her short-term and long-term benefits decisions. However, the documents that she cites in support only refer to her attorney's request regarding her appeal generally. (*See* ECF No. 7-1, PageID.73; ECF No. 7-3, PageID.256.) Unlike her short-term disability claim, she does not present any evidence of her long-term disability appeal.[7] Rather,

---

[7] The administrative record contains a letter dated November 6, 2015, from Plaintiff's counsel, requesting an appeal of Plaintiff's long-term disability benefits denial, but her long-term disability claim was still pending. (ECF No. 7-3, PageID.280-86.) On November 9, 2015, counsel confirmed via email that

Plaintiff's counsel corresponded with United using only the group policy number, GUC-OAQMV,[8] and Plaintiff's short-term disability claim number, 152050006901. (ECF No. 7-1, PageID.73.) Counsel continued to do this even after United informed him that he needed to clarify whether Plaintiff was also seeking to appeal her long-term disability denial. (ECF No. 7-3, PageID.256-57.) Further, on May 24, 2016, United informed Plaintiff's counsel that Plaintiff had appealed only her short-term disability claim, and that "if [Plaintiff] would like to appeal the Long Term Disability decision, please send a letter addressed to the Long Term Disability analyst and reference the Long Term Disability claim." (*Id.* at PageID.249.) Counsel did not respond to this email, nor did he follow the proper procedure to appeal Plaintiff's long-term disability claim. Thus, Plaintiff has not exhausted administrative remedies for her long-term disability claim.

**B. Plaintiff has not shown a significant change in functional capacity**

In any event, Plaintiff has not shown that she is entitled to long-term disability benefits by a preponderance of the evidence. Plaintiff alleges that she suffers from "fibromyalgia, migraine headaches and other conditions[,]" which "have made it impossible for her to work." (Compl. ¶ 6, ECF No. 1, PageID.2.) Plaintiff argues that United's determination was inconsistent with Plaintiff's treating physicians' recommendations, and that her anxiety, depression, fatigue, insomnia and generalized loss of energy is documented as early as September 2014.

---

Plaintiff was only appealing her short-term disability claim at that time. (*Id.* at PageID.268.) After United's denial of Plaintiff's long-term disability claim, United emailed Plaintiff's counsel twice to clarify that it had not received a long-term disability appeal and outlined the proper procedure for counsel to appeal that claim. (*Id.* at PageID.256-57, PageID.249.)

[8] Gentex's policy number was GUD-AQMV. (ECF No. 7-1, PageID.22.) The notice of group long-term benefits issued on July 28, 2014, lists the group number as G000AQMV. (*Id.* at PageID.29.)

United's long-term disability policy requires that an injury or sickness cause a significant change in a claimant's mental or physical functional capacity, which prevents a claimant from performing a material duty of claimant's regular job. (*See* ECF No. 7-1, PageID.55-56, 58.) But Plaintiff has not presented evidence that these conditions caused a significant change in her mental or physical functional capacity on or about July 12, 2015, making it impossible for her to continue working in her regular job. The only evidence in the administrative record from a licensed physician is a note from Dr. Campbell, dated September 30, 2015, which states that Plaintiff is medically unfit to work due to her major depression, fibromyalgia, chronic pain syndrome, and breast cancer. (ECF No. 7-3, PageID.281.) Yet this note is marked "void" repeatedly on its face. (*Id.*) There is nothing else from Dr. Campbell—or any other licensed physician—to support this diagnosis.

Barney, a physician's assistant, authored the remaining evidence presented during the administrative review, including two attending physician's statements, notes from Plaintiff's patient visits, and two letters to United in response to its denial of benefits. In the first undated letter, Barney indicated that Plaintiff's conditions of major depression, fibromyalgia, chronic pain syndrome, and breast cancer "have had a serious impact on her health and mental status thus resulting in an impairment to perform the functions of her job." (*Id.* at PageID.266.) In the second letter, dated February 24, 2016, Barney indicated that Plaintiff is unable to work due to her severe depression, polyarthralgia, fibromyalgia, breast cancer, and migraine headaches. (ECF No. 7-1, PageID.74.) But Barney's attending physician's statements only list diagnoses of anxiety, depression, and insomnia, and note that the symptoms first began in November 2013. (ECF No. 7-3, PageID.289-90; ECF No. 7-4, PageID.364.) In the first attending physician's statement, Barney indicated that Plaintiff should be able to work full-time in 3 to 6 months. (ECF No. 7-4,

PageID.364.) In the second attending physician's statement—submitted two months after the first statement—Barney included the same diagnoses as before, but then concluded that Plaintiff was unable to perform all job duties and unable to return to work without any explanation for this change. (ECF No. 7-3, PageID.289-90.)

Likewise, the patient-visit notes do not refer to Plaintiff's fibromyalgia. The notes contain a limited discussion of migraine headaches, including one from a June 5, 2015 visit that "[t]he course has been progressive to a point and plateaued. Severity has been symptoms bothersome (sic), but easily able to carry out all usual work/school/family." (ECF No. 7-2, PageID.156.) There is also no mention of Plaintiff's breast cancer, other than a historical note of Plaintiff's diagnosis and double mastectomy. Neither of Barney's attending physician's statements nor the complaint reference breast cancer.[9] And Plaintiff has not submitted medical treatment records for this condition.

The notes from June 26, 2015, describe Plaintiff's complaints of depressed mood, insomnia, and loss of energy, and explained that since the onset of her symptoms 3 months prior, her symptoms had not changed. (*Id.* at PageID.163.) On July 22, 2015, Plaintiff complained of worsening arthritis pain in her bilateral elbows, wrists, and hips, which she described as "aching, dull," and "mild, moderate." (*Id.* at PageID.170.) Barney noted, *inter alia*, Plaintiff's history of depression, breast cancer, and polyarthralgia. (*Id.* at PageID.173.) He recommended "long term disability for 6 months due to her chronic pain and depression." (*Id.* at PageID.172.) In addition, visit notes from July 30, 2015, indicate that Plaintiff complained of worsening, "longstanding" pain in her knees.[10] (*Id.* at

---

[9] In her complaint, Plaintiff alleges that she suffers from fibromyalgia, migraine headaches, and other conditions which have "made it impossible for her to work." (ECF No. 1, PageID.1-4.)

[10] This visit is the first time Barney discusses chronic pain treatment. Although Barney defines chronic pain as pain that "continues longer than 6 months with an accompanying injury or illness[,]" he

13

PageID.176.) She explains that "going up and down stairs, squatting, kneeling, [and] pivoting" aggravate her symptoms. (*Id.*) During the July 22, 2015 visit, Barney assesses Plaintiff's inflammatory arthritis as mild (*id.* at PageID.172), and in his July 30, 2015 notes, Barney assesses this condition as "mild and moderate, inflammatory arthritis" (*id.* at PageID.177). As of July 22, 2015, it appears that Plaintiff's arthritis worsened, but Barney does not include this condition in any of his physician's statements or his letters to United.[11] Nor does he list arthritis as a reason for her inability to work, outside of the patient notes from July 22, 2015. Again, Plaintiff does not allege chronic pain or arthritis in her complaint.

With respect to Plaintiff's depression, the visit notes indicate that Plaintiff complained of depression on May 30, 2013, but the notes do not mention any significant change in her physical or mental functional capacity on or about July 12, 2015 that would prevent her from performing her regular job of light assembly. Further, Plaintiff's psychological records were never produced to United. Dr. Campbell's conclusory references to depression in a voided disability slip and Barney's statement in letters are not persuasive evidence without medical records that support those conclusions. Moreover, Plaintiff's complaint lacks any reference to depression as one of her conditions.

The voided disability slip and Barney's letters—without medical records to support—do not

---

noted that Plaintiff has had no prior visits for her knee symptoms. (ECF No. 7-2, PageID.176-78.)

[11] In his first letter to United, Barney references Plaintiff's chronic pain syndrome, but does not reference Plaintiff's arthritis. (ECF No. 7-2, PageID.266.) There is no mention of chronic pain syndrome in the visit notes from July 22, 2015, which discuss Plaintiff's worsening arthritis symptoms. (ECF No. 7-2, PageID.170-73.) Notes from July 30, 2015, reference Plaintiff's worsening knee pain symptoms and list chronic pain under the treatment plan. (*Id.* at PageID.178.) Thus, it appears that her chronic pain is associated with her knee and not the complaints of arthritis from the July 22 visit.

show by a preponderance of the evidence that Plaintiff was entitled to long-term disability benefits for her conditions of fibromyalgia, migraine headaches, and breast cancer. Although there was evidence of some prior conditions including chronic pain and/or arthritis, depression, and insomnia, Plaintiff does not specifically allege those conditions in her complaint. And even if she had alleged those conditions in her complaint, as discussed *supra*, her medical treatment records do not show a significant change in physical or mental functional capacity preventing her from performing her regular job on or about July 12, 2015.

In addition to her long-term disability cause of action, Plaintiff now "wishes to include an action for short-term disability benefits in [her] summary judgment motion as both short and long-term disability benefits claims are based on the same policy language and Plaintiff's ongoing condition." (Pl.'s Mot. for Summ. J. 13, ECF No. 11, PageID.409.) Plaintiff's complaint only refers to her long-term disability claim; at any rate, she has failed to satisfy her burden with respect to her short-term disability claim as well. As discussed *supra*, she has not presented evidence that her conditions caused a significant change in her functioning capacity as of her final day of working, making it impossible for her to continue working as a production team member at Gentex. Likewise, she has failed to show that she was entitled to short-term disability benefits.

## IV.

In sum, Plaintiff has not exhausted the administrative review process for her long-term disability claim, and she did not include her short-term disability claim in her federal complaint. In any event, she has failed to satisfy her burden by a preponderance of the evidence that she was entitled to short-term or long-term disability benefits.

An order and judgment will enter in accordance with this opinion.


Dated: August 22, 2017                        /s/ Paul L. Maloney  
                                                     PAUL L. MALONEY  
                                                     UNITED STATES DISTRICT JUDGE